FILED

2020 JUN -2 AM 9: 04

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Petitioner,

v.

TOMOKA MEDICAL LAB, INC,
RAJEN SHAH

    Respondents.
_____/

Misc. No. 6:20-MC-22-orl-40EJK

## PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMANDS
## AND INCORPORATED MEMORANDUM OF LAW

The United States of America respectfully petitions to enforce Civil Investigative Demands No. 2020-18 and 2020-19, which the United States issued to Respondents Rajen Shah ("Shah") and his company, Tomoka Medical Lab, Inc. ("Tomoka"). The Civil Investigative Demands ("CIDs") seek information as part of an ongoing investigation into whether Tomoka and Shah knowingly submitted, or caused to be submitted, false claims to federal healthcare programs for laboratory procedures that were not reasonable and necessary, in violation of the False Claims Act ("FCA"). 31 U.S.C. § 3729 *et seq*.

On March 3, 2020, the United States served Shah with CID No. 2020-18. In addition, on March 4, 2020, and again on March 6, 2020, the United States served Tomoka with CID No. 2020-19. The CIDs were properly issued and seek information relevant to a pending false claims investigation within the authority of the Department of Justice ("DOJ"). Neither Shah nor Tomoka have produced interrogatory answers or documents in response to the CIDs.

Because these CIDs request information relevant to the United States' investigation, this Court should order Shah and Tomoka to comply with the CIDs and answer all interrogatories and produce responsive documents.

### Jurisdiction and Venue

1. The Court has subject-matter jurisdiction over this petition under 28 U.S.C. §§ 1331, 1345, and 31 U.S.C. §§ 3733(j)(1) and (j)(5), which provides that the United States may file a petition to enforce a Civil Investigative Demand with which the recipient has failed to comply.

2. Venue is proper in this district under 31 U.S.C. § 3733(j)(1) because Respondents transact business at a laboratory located within the Middle District of Florida.

### Parties

3. The Petitioner is the United States of America.

4. Respondent Tomoka is a facility that performs laboratory services and is located at 783 S. Nova Rd., Ormond Beach, Florida. It is currently owned and operated by Respondent Rajen Shah.

5. Respondent Shah is the owner and operator of Tomoka. He currently resides is Owensboro, Kentucky.

### Issuance and Service of the CIDs

6. The FCA is the government's primary tool to recover losses resulting from fraud. *Avco Corp. v. U.S. Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989). The FCA imposes statutory damages and civil penalties for knowingly submitting, or causing to be submitted, false or fraudulent claims for payment or approval to the government. 31 U.S.C. § 3729(a)(1)(A).

7.    The DOJ is responsible for investigating violations of the FCA. 31 U.S.C. § 3730(a). In 2019, the U.S. Attorney's Office began an FCA investigation, within the meaning of 31 U.S.C. § 3733, concerning allegations that Respondents billed federal healthcare programs for laboratory services that were not reasonable and necessary.

8.    Section 3733 of the FCA empowers the United States Attorney, "before commencing a civil proceeding under § 3730(a) or other false claims law," to issue a CID upon any person or entity who may be in possession, custody, or control of information "relevant to a false claims act investigation." See 31 U.S.C. § 3733(a)(1) and Attorney General Order No. 3134-2010. The recipient must then produce that information in the form of documents, answers to written interrogatories, or oral testimony. *Id.*

9.    On or about March 2, 2020, U.S. Attorney Maria Chapa Lopez issued CID No. 2020-18 and CID No. 2020-19.

10.   On March 3, 2020, the United States served Shah, in his individual capacity, with CID No. 2020-18 (hereinafter the "Shah CID"). *See* Ex. 1 (Shah CID).

11.   On March 4, 2020, and again on March 6, 2020, the United States served Tomoka with CID No. 2020-19 (hereinafter the "Tomoka CID")[1]. *See* Ex. 2 (Tomoka CID).

### Respondents' Noncompliance

12.   Where the recipient fails to comply with a CID, the Attorney General may petition for enforcement of the CID in any district where the recipient resides, is found, or transacts business. 31 U.S.C. § 3733(j)(1).

---

[1] Contemporaneously, the United States also served CID No. 2020-20 on Tennessee Valley Regional Laboratory, d/b/a Crescent Labs, a laboratory located in Knoxville, Tennessee. Because this entity does not transact business in this District, the United States anticipates filing a separate enforcement petition in the Eastern District of Tennessee.

13. The Shah CID includes five interrogatories relating primarily to Shah's ownership interest in entities that seek reimbursement from federal healthcare programs and his current sources of income. In addition, the Shah CID also contains three document requests that primarily require him to produce documents that support his answers to the interrogatories as well as financial agreements that he, in his individual capacity, has with other laboratories.

14. The Tomoka CID includes five interrogatories relating to Tomoka's ownership structure, financial relationships with other laboratories, and certain reimbursement claims submitted to federal healthcare programs. In addition, the Tomoka CID includes six document requests that, collectively, require the company to produce corporate documents relating to the structure, ownership, and control of Tomoka; policies related to molecular laboratory testing; financial relationships with other laboratories; clinical laboratory improvement amendments ("CLIA") certifications; and patient charts and files for patients identified in a schedule attached to the Tomoka CID.

15. The United States served the Shaw CID via certified mail on March 3, 2020 (*See* Ex. 3) and personally served the Tomoka CID at the company's principal address on March 4, 2020 (*See* Ex. 4). However, pursuant to Mr. Shah's request, the United States also served the Tomoka CID via email to Mr. Shah's email address on March 6, 2020. *See* Ex. 5.

16. After serving the Shah and Tomoka CIDs, the United States received no response from the Respondents. As a result, on April 16, 2020, the undersigned sent each Respondent a letter, via certified mail, advising the United States had served the CIDs, and that if the United States did not receive full and complete responses to the CIDs by April 24, 2020, it would file a

petition for enforcement, pursuant to 31 U.S.C. § 3733(j)(1). *See* Ex. 6 (letter to Respondents). The undersigned also attached the CIDs to these letters[2].

17.  The United States has received no written response from the Respondents to either the CIDs or the April 16, 2020 letters[3].

## Memorandum of Law

**A.  Issuance of the CIDs is a proper and appropriate exercise of the authority conferred on the DOJ by Congress**

The DOJ is the agency of the United States responsible for enforcing the provisions of the FCA. 31 U.S.C. § 3730(a). The FCA specifically authorizes the Attorney General of the United States, or a designee, to issue CIDs to any person who may be in possession, custody, or control of information "relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). The DOJ possesses broad investigatory powers to determine whether a violation of the FCA has occurred, and a CID requesting documents is one such means of obtaining the necessary information. Courts exhibit considerable deference to agency subpoenas, recognizing their importance to the executive branch's constitutional mandate to investigate violations of federal law and will decline to enforce an administrative subpoena only where it bears no relation to a lawful purpose of the requesting agency.

---

[2] In addition, on April 15, 2020, the undersigned provided a copy of the letter and CIDs to Respondent Shah via email.

[3] On April 16, 2020, Respondent Shah left a voicemail for the undersigned. In this voicemail, Shah claimed he previously sent an email to the undersigned requesting an extension of time to respond because of staffing issues related to COVID-19. The undersigned did not receive any such email and has sent Shah three separate emails requesting that he forward any emails or communications. Shah has not responded. *See* Ex. 7 (emails to Shah).

### B. Civil investigative demands, like other administrative subpoenas, serve the government's expansive "power of inquiry" in enforcing federal law

As the United States Supreme Court has explained, administrative agencies, including the DOJ, possess broad investigatory powers:

> Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law.

*United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950). The Eleventh Circuit has similarly recognized "the broad investigatory power of administrative subpoenas." *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622 (11th Cir. 1994) (quoting *Morton Salt*, 338 U.S. at 642-43).

An FCA CID is a type of administrative subpoena that allows the DOJ "to investigate whether there is a basis for remedying a false claim made against the United States." *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995). "Although Congress has chosen to call this subpoena by another name, a false claims CID is, at its essence, a subpoena issued by an administrative agency." *Id.* Courts have emphasized both the DOJ's law-enforcement mission and the importance of CIDs in fulfilling it. *See, e.g., Markwood*, 48 F.3d at 979 ("Congress intended the false claims CID to provide the Department of Justice with a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claim suit."); *United States v. Witmer*, 835 F. Supp.

208, 211 (M.D. Pa. 1993), *aff'd,* 30 F.3d 1489 (3d Cir. 1994) (CID's purpose is to "enable the Government to determine whether enough evidence exist[s] to warrant the expense of filing [a civil] suit, as well as to prevent the potential Defendant from being dragged into court unnecessarily."); *see also In re Oral Testimony of a Witness Subpoenaed Pursuant to Civil Investigative Demand No. 98-19*, 1 F. Supp. 2d 587, 589 (E.D. Va.), *aff'd,* 182 F.R.D. 196 (E.D. Va. 1998) ("The issuance of a CID is a unique procedure almost, but not quite, akin to a grand jury investigation."). Particularly at the outset, investigators must cast a large net: "[A] wide range of investigation is necessary and appropriate where . . . multifaceted activities are involved, and the precise character of possible violations cannot be known in advance." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 877 (D.C. Cir. 1977). Agencies are thus afforded great latitude in gathering information by administrative subpoena, an allowance stemming from the government's unique, national role in policing federal-law violations.

        1.      <u>Judicial review of an administrative subpoena is "sharply limited"</u>

Courts cast a deferential eye toward agency subpoenas. "It is well-settled that the role of a district court in a proceeding to enforce an administrative subpoena is sharply limited." *Fla. Azalea Specialists*, 19 F.3d at 623 (citing *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir.1991)); *see also Markwood*, 48 F.3d at 976 (noting that "a district court's role in the enforcement of an administrative subpoena is a limited one"). In such proceedings, the court may inquire only as to whether (1) the administrative investigation is within the agency's authority, (2) the agency's demand is too indefinite, and (3) the information sought is reasonably relevant. *United States Equal Employment Opportunity Comm'n v. KB Staffing, LLC*, No. 8:14-MC-41-T-30AEP, 2014 WL 12628619, at *2 (M.D. Fla. Aug. 28, 2014) (citing *U.S. E.E.O.C. v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996)); *see also Fla. Azalea Specialists*, 19 F.3d

at 623 (quoting *Federal Election Commission v. Florida for Kennedy Committee*, 681 F.2d 1281, 1284 (11th Cir. 1982)); *Morton Salt Co.*, 338 U.S. at 652. Generally, unless the subpoena was issued for some improper purpose that would abuse the court's process—such as harassment or bad faith—it should be enforced. *See United States v. Powell*, 379 U.S. 48, 58 (1964); *Markwood*, 48 F.3d at 978 (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298 (1978)). The challenger bears a "heavy burden" of demonstrating such impropriety. *Markwood*, 48 F.3d at 978 (citation omitted). For enforcement of a CID, the DOJ must also show that it has complied with the procedural requirements for issuance set forth in the authorizing statute. *See Witmer*, 835 F. Supp. at 221.

As described above, the CIDs were properly issued within the DOJ's authority and in furtherance of an FCA investigation of Tomoka and Shah. The only issue, therefore, is whether the answers and documents requested are "reasonably relevant" to the DOJ's investigation.

2. <u>A CID must be enforced if documents sought are "reasonably relevant" to the DOJ's investigation</u>

Under Eleventh Circuit law, "[t]he measure of relevance used in subpoena enforcement actions is quite broad," and the district court should enforce an administrative subpoena if the information sought is "reasonably relevant" to the investigation. *Fla. Azalea Specialists*, 19 F.3d at 624, 623. As the *Markwood* court observed, the Supreme Court has said that administrative subpoenas should be enforced when "the evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose of the [agency] in the discharge of [its] duties." 48 F.3d at 977 (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)); *see also, e.g., E.E.O.C. v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) ("An administrative subpoena will be enforced, when challenged on the basis of relevancy, if the material subpoenaed touches a matter under investigation."); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d

875, 882 (5th Cir. 1989) ("For purposes of an administrative subpoena, the notion of relevancy is a broad one.").

In the CID context, "[r]elevancy is determined in terms of the investigation rather than in terms of evidentiary relevance." *United States v. ASG Solutions Corp.*, 2018 WL 1418023 (S.D. Cal. Mar. 22, 2018). The disparate standards reflect the fundamentally different tasks in which the requesting parties are engaged: a civil litigant attempting to bolster (or refute) allegations of wrongdoing that have already been investigated and formally lodged on the one hand, federal law enforcement gathering materials "to inform itself as to whether there is probable violation of the law" before deciding whether to litigate at all on the other. *Morton Salt*, 338 U.S. at 643. Courts have thus "emphasized that administrative investigations could not be equated with the more constrained operations of the judicial process." *Fed. Election Comm'n v. Lance*, 617 F.2d 365, 369 (5th Cir. 1980), *supplemented*, 635 F.2d 1132 (5th Cir. 1981). In light of this difference, a district court will "defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *Resolution Tr. Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (quotations omitted) (citation omitted).

### C. The requested answers and documents are relevant to the underlying False Claims Act investigation

The DOJ is investigating whether the Respondents have submitted, or caused to be submitted, claims to federal healthcare programs for laboratory services that are medically unnecessary. Under applicable laws and regulations, a laboratory can only bill healthcare programs for laboratory services ordered by a provider. *See* 42 CFR 410.32(a)[4]. The requested answers and documents are relevant to this primary issue.

---

[4] In relevant part, this section states: "[a]ll diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a

9

However, an FCA investigation is not narrowly constrained and can involve many issues beyond the direct provision of services reimbursed by Medicare. The DOJ must also determine, for example, which individuals are responsible for submitting potentially false claims, setting corporate policies that may have led to the submission of false claims, or directing the actions of lower-level staff. Here, some of the requested information pertains to financial relationships the Respondents may have with other entities. The United States expects these interrogatory answers and documents will provide both direct and circumstantial evidence of, as well as necessary context for, the allegations under investigation.

While the government is not required to know with precision the value of each item it seeks at this early stage—after all, it "cannot be expected to ask only questions to which it already knows the answers," *Kloster Cruise*, 939 F.2d at 923—it is confident that the requested information will help "determine whether enough evidence exist[s] to warrant the expense of filing [a civil] suit"—perhaps "prevent the potential Defendant from being dragged into court unnecessarily." *Witmer*, 835 F. Supp. at 211 (quotations omitted) (citation omitted). Because these requests satisfy the broad relevancy standard applicable to agency investigations, the Respondents should be ordered to answer the interrogatories and produce responsive documents.

### D. Respondents failed to timely challenge the CIDs, waiving any objection to compliance

The False Claims Act requires that a person looking to modify or set aside a CID must file a petition to do so "within 20 days after the date of service" or within a longer period set forth in the demand. 31 U.S.C. § 3733(j)(2). The Respondents were served on March, 3, 2020,

---

consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem. **Tests not ordered by the physician who is treating the beneficiary are not reasonable and necessary [.]**" (emphasis added).

March 4, 2020 and March 6, 2020. They have never filed a petition to modify or set aside the demands and have, therefore, waived any objection to any request in the CIDs. Accordingly, the Respondents should be ordered to answer all interrogatories and produce all responsive documents.

## Conclusion

For the foregoing reasons, the United States respectfully petitions this Court for an order compelling Respondents to produce answers and documents responsive to the CIDs.

Dated: June 2, 2020                              Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:     *Sean P. Keefe*
        SEAN P. KEEFE
        Assistant United States Attorney
        Florida Bar No.: 0413828
        400 North Tampa Street, Ste 3200
        Tampa, FL 33602
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6200
        Email: sean.keefe@usdoj.gov

        *Counsel for the United States of America*